IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **FEDERAL TRADE COMMISSION**<br>    600 Pennsylvania Avenue, N.W.<br>    Washington, D.C. 20580,<br><br>                        Petitioner,<br><br>v.<br><br>**CARIS LIFE SCIENCES, INC.**<br>    750 West John Carpenter Freeway<br>    Suite 800<br>    Irving, TX  75039<br><br>                        Respondent. | Case No.: 1:21-mc-00115-RJL<br><br>**[REDACTED/PUBLIC]** |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PETITION OF THE FEDERAL TRADE COMMISSION FOR AN ORDER
ENFORCING SUBPOENAS *DUCES TECUM* AND *AD TESTIFICANDUM*
IN AN ADMINISTRATIVE PROCEEDING**

*<u>Introduction</u>*

This case involves discovery sought from a nonparty, Caris Life Sciences, Inc. ("Caris"), to an ongoing administrative proceeding. An Administrative Law Judge ("ALJ") of the Federal Trade Commission is currently hearing *In re Illumina, Inc. and GRAIL, Inc.*, FTC Docket No. 9401, an adjudication of an administrative complaint alleging that a proposed merger between Illumina, Inc. ("Illumina") and GRAIL, Inc. ("GRAIL") could injure consumers by substantially reducing competition in the market for multi-cancer early detection ("MCED") tests in violation of the Clayton Act and FTC Act. The complaint alleges that GRAIL is currently developing an MCED test and that Illumina is the primary supplier of an important input for those tests, known as next-generation genetic sequencing platforms ("NGS platforms"). According to the

complaint, if Illumina acquires GRAIL, it will likely seek to disadvantage other companies vying to develop competing MCED tests. Given the paucity of alternative NGS suppliers, such tactics could lead to reduced innovation, increased prices, or lower quality for such tests. The complaint alleges that ███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████

In defense of these allegations, Illumina and GRAIL issued two subpoenas to Caris – one for documents and one for deposition testimony by Caris's President and Chief Science Officer, Dr. David Spetzler – to determine the extent to which Caris is developing an MCED test and the nature of such test. Although it produced some documents, Caris has refused to produce documents responsive to a narrowed request seeking material about the features and timeline of any MCED test it is developing because such information constitutes trade secrets. And it has refused to make Dr. Spetzler available to testify on those topics for the same reason.

Under the FTC's Rules of Practice for administrative proceedings, a party seeking to compel information from a recalcitrant nonparty must ask the presiding Administrative Law Judge ("ALJ") to certify such a request to the Commission itself, so that the Commission may determine whether to seek enforcement in federal district court through its Office of General Counsel. As the attached administrative record shows, Illumina/GRAIL and Caris have fully litigated such a request before the ALJ and the Commission, culminating in two critical and dispositive orders: (1) an order of the ALJ finding that certification to the Commission was appropriate because the information sought was relevant and properly protected by an existing protective order, and (2) an order of the Commission affirming the ALJ. Yet, Caris has failed to comply with the subpoenas.

Accordingly, this matter is now ripe for district court review.  As demonstrated below, in order to provide for a fair administrative trial, Illumina and GRAIL are entitled to enforcement of their subpoenas under well-established precedent.  Moreover, the Commission's own findings – most notably its conclusions that the information sought is relevant to the underlying complaint and that any confidential or trade secret information is fully protected by the extant protective order – are entitled to deference.  For these reasons, the Commission petitions this Court, pursuant to Section 9 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 49, for an order requiring Caris to comply in full with the subpoena for documents and with the deposition subpoena by permitting Dr. Spetzler to testify on the core issues soon thereafter.

## JURISDICTION AND VENUE

The FTC Act and the Commission's Rules of Practice authorize a party to an agency adjudicatory proceeding to issue subpoenas for documents or testimony. *See* 15 U.S.C. § 49; 16 C.F.R. § 3.34.  If a subpoena recipient fails to comply, the Commission may petition the district court "within the jurisdiction of which such inquiry is carried on" for an order requiring compliance. *See* 15 U.S.C. § 49.  The current administrative proceeding is being heard within this judicial district at the FTC's headquarters in Washington, D.C.  Pet. Ex. 1.  Because "the designated place of hearing is Washington, D.C.," it "is thus necessarily a place where the 'inquiry is carried on'" for adjudicatory purposes.  *FTC v. Browning*, 435 F.2d 96, 100 (D.C. Cir. 1970) (citing 15 U.S.C. § 49). Accordingly, venue is proper in this Court, which thus should issue a show cause order requiring Caris to comply with the subpoenas.

## STATEMENT

The FTC incorporates the statement of facts contained in the accompanying Petition.

**ARGUMENT**

**I.      Standards For Enforcement Of Adjudicatory Subpoenas**

The standards for the judicial enforcement of administrative compulsory process have long been settled in this Circuit: "[T]he court's role in a proceeding to enforce an administrative subpoena is a strictly limited one." *FTC v. Texaco, Inc.*, 555 F.2d 862, 871-72 (D.C. Cir. 1977) (*en banc*) (citing *Endicott Johnson v. Perkins*, 317 U.S. 501, 509 (1943)); *see also Oklahoma Press Publ'g Co. v. Walling*, 327 U.S. 186, 209 (1946); *United States v. Morton Salt Co.*, 338 U.S. 632, 642-43 (1950).  Thus, in reviewing subpoenas arising out of an adjudicatory proceeding, "[t]he enforcement court's function is limited to determining 'if the inquiry is within the authority of the agency, the demand is not too indefinite, and the information sought is reasonably relevant.'" *FTC v. Anderson*, 631 F.2d 741, 745 (D.C. Cir. 1979) (citing *Morton Salt*, 338 U.S. at 652).  In making this determination, the agency's own appraisal of relevancy must be accepted so long as it is not "obviously wrong." *FTC v. Invention Submission Corp.*, 965 F.2d 1086, 1089 (D.C. Cir. 1992) (citing *FTC v. Carter*, 636 F.2d 781, 787-88 (D.C. Cir. 1980)).

Furthermore, proceedings to enforce administrative subpoenas are entitled to summary disposition.  They are special statutory matters cognizable under Fed. R. Civ. P. 81(a)(5), and are properly instituted by a petition and order to show cause (rather than by complaint and summons).  *See*, *e.g.*, *FTC v. MacArthur*, 532 F.2d 1135, 1141-42 (D.C. Cir. 1976); *FTC v. Sherry*, 1969 WL 98583, *3 (D.D.C. May 29, 1969) ("The proper procedure in such cases is that they be initiated by a petition filed by the agency, brought on by an order to show cause, and decided upon pleadings, affidavits, and other written submissions.").[1]

---

[1] Due to their summary nature, "'discovery is improper in a summary subpoena enforcement proceeding.'"  *Carter*, 636 F.2d at 789 (quoting *United States v. Exxon Corp.*, 628 F.2d 70, 77 n.7 (D.C. Cir. 1980)); *accord*, *Invention Submission Corp.*, 965 F.2d at 1091.

Importantly, the *Morton Salt* test applies to both adjudicatory and investigatory subpoenas and both are subject to the "reasonably relevant" standard. *See Anderson*, 631 F.2d at 745-46 (citing *FTC v. Browning*, 435 F.2d 96, 102 (D.C. Cir. 1970)); *see also Dow Chemical Co. v. Allen,* 672 F.2d 1262, 1267-68 (7th Cir. 1982); *Adams v. FTC*, 296 F.2d 861, 866 (8th Cir. 1961) (citing and applying *Morton Salt* to proceeding to enforce adjudicative subpoenas under Section 9 of the FTC Act). In the administrative adjudicatory context, "the relevancy of an adjudicative subpoena is measured against the charges specified in the complaint." *Anderson*, 631 F.2d at 746 (citing *Moore Business Forms, Inc. v. FTC*, 307 F.2d 188, 189 (1962)). As shown below, the subpoenas served on Caris by Illumina and GRAIL easily satisfy the *Morton Salt* criteria.

**II.     The Subpoenas Are Within The FTC's Authority, Are Not Too Indefinite, And Seek Reasonably Relevant Documents and Testimony**

The subpoenas satisfy the standards governing enforcement of administrative compulsory process. The Commission lawfully issued the subpoenas; the subpoenas are not too indefinite; and the documents and testimony being sought are reasonably relevant to the administrative adjudication.

**A.     The Subpoenas are within the Commission's Authority.**

The Commission's Rules of Practice authorized both subpoenas issued to Caris, a nonparty in the administrative proceeding. The Rules provide that "[c]ounsel for a party may sign and issue a subpoena [*duces tecum*], on a form provided by the Secretary, commanding a person to produce and permit inspection and copying of designated books, documents, or tangible things." 16 C.F.R. § 3.34(b). Such subpoena "may be used by any party for purposes of discovery, for obtaining documents for use in evidence, or for both purposes." *Id*. The subpoena for documents served on Caris was issued under this authority. *See* Pet. Ex. 4. The Rules also

state that "[c]ounsel for a party may sign and issue a subpoena, on a form provided by the Secretary, requiring a person to appear and give testimony at the taking of a deposition to a party requesting such subpoena."  16 C.F.R. § 3.34(a).  The subpoena for deposition testimony issued to Dr. David Spetzler was issued under this authority.  *See* Pet. Ex. 5.

More generally, the authority to issue adjudicative subpoenas such as these flows directly from the authority provided the Commission in Section 9 of the FTC Act.  Section 9 empowers the Commission to issue subpoenas seeking documents from "any person, partnership, or corporation" and to require the production of such documents "at any designated place of hearing."  *See* 15 U.S.C. § 49; *see also* 15 U.S.C. § 46 (authorizing the Commission to investigate corporations).  Section 9 likewise authorizes the Commission to "order testimony to be taken by deposition in any proceeding" pending under the FTC Act, such as the current administrative hearing under Section 5(b), 15 U.S.C. § 45(b).  *See* 15 U.S.C. § 49.  Thus, under either Rule 3.34 or Section 9, the subpoenas at issue fall squarely within the FTC's authority.

      **B.**      **The Subpoenas are not too Indefinite.**

The requirement that a subpoena be "not too indefinite" may be read to require that the scope and legal basis of the subpoena be sufficiently and properly defined.  In *SEC v. Arthur Young & Co.*, 584 F.2d 1018, 1025-26 (D.C. Cir. 1978), the D.C. Circuit applied such a view and found a subpoena "not too indefinite" where (1) the scope of the investigation was "adequately bounded," (2) the SEC's subpoena power was coextensive with its investigative power; and (3) the Commission's interest in the documents was not "untoward."  For the reasons discussed above, those requirements are satisfied here because the subpoenas were issued within the authority and limits provided by Commission statute and regulations.  Nor are the subpoenas "untoward;" while Caris asserted that the document subpoena sought irrelevant and excessive

information about its cancer screening tests, Pet. Ex. 7 at 7-8, it provided no evidence that the subpoenas were issued for an improper purpose.

Alternatively, a requirement that a subpoena be "not too indefinite" could be read as a requirement that the subpoena's specifications be clear, such "that a person can in good faith understand which documents must be produced." *RTC v. Greif*, 906 F. Supp. 1446, 1452 (D. Kan. 1995) (citing *In re Grand Jury Proceedings*, 601 F.2d 162 (5th Cir. 1979)); *cf.* 15 U.S.C. § 57b-1(c)(3)(A) (FTC CIDs for documents must identify the material to be produced "with such definiteness and certainty as to permit such material to be fairly identified."). The subpoenas here meet this standard. All the specifications and definitions in the subpoena *duces tecum* are plainly expressed and easily understandable. *See generally* Pet. Ex. 4. And the subpoena as narrowed requests ███████████████████████████████████████████████ ███████████████████████████████ Pet. Ex. 6 at 9. Caris's responses show that the company clearly comprehends the information and testimony sought.

Finally, a requirement that a subpoena be "not too indefinite" could be read as inquiring whether the subpoena presents an undue burden. *See*, *e.g., Texaco*, 555 F.2d at 879 (describing this element of the *Morton Salt* test for judicial enforcement as "not unduly indefinite or unreasonably burdensome"). The responsibility for showing that an administrative subpoena presents an undue burden falls on the subpoena recipient. *Id.* at 882 & n.49. To establish this, Caris would have to show that compliance would threaten to disrupt its business unduly, or otherwise seriously hinder its operations. *See*, *e.g.*, *Texaco,* 555 F.2d at 882; *Invention Submission Corp.*, 965 F.2d at 1090; *FTC v. Rockefeller*, 591 F.2d 182, 190 (2d Cir. 1979).

But, as the ALJ found, Caris's burden argument fails; its assertions of burden based on document search efforts were conclusory and were not greater than the imposition on

subpoenaed parties that "is to be expected and is necessary in furtherance of the agency's legitimate inquiry and the public interest." Pet. Ex. 8 at 5-6 (quoting *FTC v. Dresser Indus., Inc.*, 1977 U.S. Dist. LEXIS 16178, *13 (D.D.C. 1977); *see also In re OSF Healthcare Sys.*, Dkt. No. 9349, 2012 WL 588758, at *2 (Feb. 14, 2012) (even a "substantial degree of burden" will "not excuse producing information that appears generally relevant to the issues in the proceeding."). (citing *In re Kaiser Alum. & Chem. Corp.*, 1976 FTC LEXIS 68, at *19-20 (Nov. 12, 1976)). And, as just described, Illumina and GRAIL substantially narrowed the scope of their subpoena requests to ask for only ████████████████████████████████████

████████████████████████████████████████████████████████████████

Pet. Ex. 6 at 9. Such efforts do not impose an undue burden.

> **C.  The Subpoenas seek Documents and Testimony that are Reasonably Relevant to the Commission's Complaint.**

As explained earlier, an adjudicatory subpoena will be upheld where it seeks information or testimony that is "reasonably relevant" to "the charges specified in the complaint." *Anderson*, 631 F.2d at 745-46; *see also Adams*, 296 F.2d at 866. The measurement is a "relaxed" one, *Invention Submission*, 965 F. 2d at 1090, that requires only a showing that the information sought is "not clearly irrelevant or immaterial." *Arthur Young*, 584 F.2d at 1029; *see also EEOC v. Lockheed Martin Corp., Aero & Naval Systems*, 116 F.3d 110, 113 (4th Cir. 1997) ("[T]he term 'relevant' will be 'generously construed' to 'afford[] the Commission access to virtually any material that might cast light on the allegations against the employer."); *Doe v. United States,* 253 F.3d 256, 266 (6th Cir. 2001) (holding that relevance should be construed "broadly"). Commission adjudicatory rules implement this standard by permitting "[p]arties [to] obtain discovery to the extent that it may be reasonably expected to yield information relevant to the

allegations of the complaint, to the proposed relief, or to the defenses of any respondent." 16 C.F.R. § 3.31(c)(1).

The discovery sought easily satisfies the "reasonable relevance" standard because it relates directly to the complaint allegations and defenses to those charges. The complaint alleges that the effect of the proposed merger is likely to be anticompetitive because once Illumina acquires GRAIL, it will have the incentive and ability to harm GRAIL's potential "rivals" in the MCED test market, which could lead to reduced innovation or higher prices in that market. Thus, evidence from other potential participants in the MCED market is important for Illumina's and GRAIL's defenses. In particular, the complaint alleges tha**t** ▮ "expect[s] to launch ▮ as [a] first step[] towards developing [an] MCED test[]," and that ▮ is one of GRAIL's "rivals" in the MCED test market that will be harmed by the proposed transaction. Pet. Ex. 1 ¶¶ 46, 48. Complaint Counsel's reliance on this claim is reflected by ▮ . *See* Pet. Ex. 6, Exs. 26, 28. ▮ explanation or verification of these claims is thus highly relevant to the complaint allegations and defenses against those charges. Further, as Illumina and GRAIL point out, ▮ ▮ Pet. Ex. 6 at 7, Goswami Decl., Ex. 2. But they argue that they ▮ ▮ Pet. Ex. 6 at 7. In sum, Illumina and GRAIL's outstanding requests to ▮ respond directly to the complaint allegations; without ▮ information, they will be less able to defend themselves. *Id*.

This analysis by itself is sufficient to establish the reasonable relevance of the subpoena requests. If there were any remaining doubts, however, those were resolved when the ALJ and Commission both reviewed the subpoenas and agreed that the subpoenas sought relevant information. In granting Illumina and GRAIL"s motion to certify, the ALJ concluded that the requested information was relevant because the complaint alleged that ▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ to compete with GRAIL's test and would be adversely affected by the acquisition. Pet. Ex. 8 at 4. The Commission similarly concluded that the requested information will likely help resolve whether ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Pet. Ex. 9 at 5. For the reasons discussed above, the ALJ's and Commission's determinations are correct. Moreover, they are entitled to deference from this Court and "*must be accepted* so long as [they are] not 'obviously wrong.'" *Invention* Submission, 965 F.2d at 1090 (citing *Carter*, 636 F.2d at 787-88 and *Texaco*, 555 F.2d at 877 n. 32) (emphasis added). Caris has provided no reason to find the ALJ's or Commission's determinations to be obviously wrong.

### D    The Confidential Nature of the Requested Information is No Reason to Withhold its Production.

Caris cannot resist compliance on the basis that the subpoenas seek confidential information or trade secrets. This is particularly true where a protective order is in place. Indeed, Commission rules provide that the ALJ "shall issue a protective order" in a form reflected in the rule's appendix "[i]n order to protect the parties and third parties against improper use and disclosure of confidential information." 16 C.F.R. § 3.31(d). In the administrative case, the ALJ has issued a protective order designed to protect "competitively sensitive information," and which allows non-parties to designate documents containing such information as "confidential material." Pet. Ex. 2, Attach. A ¶¶ 1, 3. Any information

designated confidential by Caris cannot be viewed by Illumina or GRAIL, but can be accessed only by outside counsel and court personnel, and cannot be used outside of that proceeding. *Id.*, ¶¶ 7, 8.

Courts and the Commission have consistently held that such protective orders adequately balance the parties' need for confidential business information and the sensitivity of non-parties to producing their nonpublic information. *See, e.g.*, *In re N. Texas Specialty Physicians*, Dkt. No. 9312, 2004 WL 527340, at *2 (Jan. 30, 2004) ("The fact that discovery might result in the disclosure of sensitive competitive information is not a basis for denying such discovery.") (quoting *LeBaron v. Rohm and Hass Co.*, 441 F.2d 575, 577 (9th Cir. 1971)); *FTC v. Dresser Indus.*, 1977 WL 1394 at *5 ("The mere fact that some of the subpoenaed material may be confidential does not, however, excuse compliance with the subpoena"; FTC protective order deemed adequate) (citations omitted) (citations omitted); *Dean v. Anderson*, No. 01-2599-JAR, 2002 WL 1377729, at *3 (D. Kan. June 6, 2002) ("[I[t is well settled that confidentiality does not act as a bar to discovery and is generally not grounds to withhold documents from discovery. Confidentiality concerns in many cases may be addressed with an appropriate protective order.") (citations omitted); *Barrington v. Mortage IT, Inc.*, No. 07-61304-CIV, 2007 WL 4370647, at *1 n.3 (S.D. Fla. Dec. 10, 2007) (same); *Aquastar Pool Prod. Inc. v. Paramount Pool & Spa Sys.*, No. CV-19-00257-PHX-DWL, 2019 WL 250429, at *4 (D. Ariz. Jan. 17, 2019) ("Paramount is not entitled to withhold those materials [that contain confidential information] from Aquastar because a protective order is already in place that will prevent Aquastar from misusing the information."); *FTC v. Rockefeller*, 441 F. Supp. 234, 242 (S.D. N.Y. 1977) (stating that an objection to a subpoena on grounds that it seeks confidential information "poses no obstacle to enforcement"), *aff'd*, 591 F.2d 182 (2d Cir. 1979).

Caris complained about ███████████████████████████████████

███████████████████████████████████ But, as the Commission

stated in agreement with the ALJ, █████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

In fact, Caris has already produced materials pursuant to this Protective Order. ███

████████████████████████████████████████████████████████

███████████████████████████████

## CONCLUSION

The Commission has satisfied the required showing for enforcement of the document and deposition subpoenas issued by Illumina and GRAIL. This Court should issue the attached proposed order directing Caris to show cause why the subpoenas should not be enforced. Following that proceeding, the Court should grant the Commission's petition and enforce the subpoenas, entering its own order directing Caris to (1) produce within one week documents sufficient to describe ████████████████████████████████████████

████████████████████████████████ and (2) make Dr. David Spetzler

available for a deposition promptly after the document production is completed.

| | |
|---|---|
| Date:  September 30, 2021<br>[originally submitted September 9, 2021] | Respectfully submitted,<br><br>J. REILLY DOLAN<br>Acting General Counsel<br><br>MICHELE ARINGTON<br>Assistant General Counsel for Trial Court Litigation<br><br>*/s/  Michael D. Bergman*<br>MICHAEL D. BERGMAN<br>Attorney, Office of General Counsel<br>(D.C. Bar No. 437994)<br><br>FEDERAL TRADE COMMISSION<br>600 Pennsylvania Ave., N.W.<br>Washington, D.C. 20580<br>Tel:  (202) 326-3184 (Bergman)<br>Fax:  (202) 326-2477<br>E-mail: mbergman@ftc.gov |