## UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| FEDERAL TRADE COMMISSION, | ) | |
| | ) | |
| *Petitioner*, | ) | |
| | ) | |
| v. | ) | Case No. 1:21-mc-00115-RJL |
| | ) | |
| CARIS LIFE SCIENCES, INC., | ) | **[REDACTED/PUBLIC]** |
| | ) | |
| *Respondent.* | ) | |
| | ) | |

## RESPONDENT CARIS LIFE SCIENCES, INC.'S
## RESPONSE TO THE ORDER TO SHOW CAUSE

## SUMMARY

The Federal Trade Commission (the "Commission" or "FTC") seeks this Court's assistance in enforcing third-party administrative subpoenas issued by Illumina, Inc. ("Illumina") and GRAIL, Inc. ("GRAIL") to Caris Life Sciences, Inc. ("Caris") months ago but which Illumina and GRAIL waited until the eve of trial to seek to enforce. The key question in the underlying adjudicatory proceeding here is whether the merger of Illumina and GRAIL will harm competition in the market for multi-cancer early detection tests ("MCED tests"). Though it is not a party to that adjudicatory proceeding, Caris produced discovery materials in response to Illumina and GRAIL's subpoenas and now finds itself in the Commission's crosshairs because Caris refuses to provide even more discovery and deposition testimony ████████████████████████ ██████████. During the Commission's investigation of the merger, ████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████. The Commission has not explained why Illumina and GRAIL need the highly sensitive proprietary details of precisely how Caris is developing its competitive product in order to defend against its merger challenge.

Rather, it appears that Illumina and GRAIL are intent on pursuing a fishing expedition for irrelevant, highly sensitive details of ████████████████ **that will do little to affect the FTC litigation but may seriously harm Caris**. Moreover, they apparently want testimony on issues wholly irrelevant ████████████████████████████. Forcing Caris to provide these highly sensitive trade secrets to potential competitors is unnecessary and unduly burdensome. Accordingly, the subpoenas should not be enforced.

## BACKGROUND

**A.  Illumina and GRAIL subpoenaed Caris after the Commission filed the adjudicatory proceeding.**

Last year, the Commission opened an investigation into Illumina's proposed acquisition of GRAIL.  During that investigation, the Commission issued civil investigative demands to Caris. In response, Caris produced documents to the Commission and produced Caris's President and Chief Science Officer, Dr. David Spetzler, to testify in an investigational hearing.  In March 2021, the Commission filed an adjudicatory proceeding against Illumina and GRAIL, alleging that the merger would substantially lessen competition in a market for MCED tests. (Compl. ¶ 1.)  Among other things, the Commission contended that ████████████████████████████ ████████████████████████████████████████. (Compl. ¶¶ 46, 77.)  The Commission also sought to preliminarily enjoin the merger in federal court.  *See Fed. Trade Comm'n v. Illumina Inc.*, Case No. 1:21-cv-00873-RC (D.D.C.); *Fed. Trade Comm'n v. Illumina Inc.* Case No. 3:21-cv-00800 (S.D. Cal.).  These cases were consolidated and then voluntarily dismissed by the FTC after the European Commission announced that it was investigating the proposed acquisition.[1]

In April 2021, Illumina and GRAIL subpoenaed documents from Caris and issued a deposition subpoena to Dr. Spetzler in the federal action.  Illumina and GRAIL sought ten broad categories of documents, including ████████████████████████████████

---

[1] *See* Dkt. 127 in Case No. 3:21-cv-00800; Dkt. 58 in Case No. 1:21-cv-00873-RC; *Statement of FTC Acting Bureau of Competition Director Maribeth Petrizzi on Bureau's Motion to Dismiss Request for Preliminary Relief in Illumina/GRAIL Case*, FTC (May 20, 2021), https://www.ftc.gov/news-events/press-releases/2021/05/statement-ftc-acting-bureau-competition-director-maribeth.

*(cont'd)*

███████████████████████████. (RX4 at 13-15.)[2]  Caris objected to the

document subpoena, but offered to meet and confer about the scope of discovery.  (RX6.)[3]  Caris,

Illumina, and GRAIL then spent months discussing the scope of discovery in response to the

federal subpoenas and the similar subpoenas that Illumina and GRAIL later issued in the

Commission's adjudicatory proceeding.

Caris ultimately produced over 8,000 pages of documents to Illumina and GRAIL.  But it

objected to producing broad categories of highly confidential and proprietary documents relating

to ███████████████████████████████████████

█████████████████████████████. (CX1 at 3.)

**B.**      **Illumina and GRAIL initially told Caris that they needed narrow discovery on** ████
████████████████████████████.

Throughout most of the negotiations, discovery concerning ████████████████ was the

only major unresolved discovery dispute.  On May 19, Illumina and GRAIL asked for "documents

sufficient to show ██████████████████████" (RX12 at 4.)  When Caris refused

to produce this proprietary information, counsel for Illumina clarified that "[w]e are not looking

for every single document relating to ██████████████████████" but only a

"handful" of "high-level overview documents" regarding ████████████████████

---

[2]   "PX" refers to the Commission's exhibits to the Petition for an Order Enforcing the Subpoenas.
"RX" refers to the exhibits to Illumina and GRAIL's Motion to Certify filed with the ALJ,
which the Commission attached in its entirety as Petition Exhibit 6.  "CX" refers to Caris's
exhibits submitted in response to the Motion to Certify, which is attached to Noelle Reed's
Declaration submitted as Ex. A to that response.  The response and all exhibits were attached
as Petition Exhibit 7.  Page references are to the PDF page.

[3]   The Commission dismissed the federal court action before Caris finished meeting and
conferring about the subpoenas with Illumina and GRAIL.

*(cont'd)*

███████████████████████████████████████████████████

████████████████████████████. (*Id*. at 2.)  On May 24, Caris asked Illumina and GRAIL

if they intended to proceed with a motion to compel and stated that Caris would present Dr.

Spetzler for deposition only once and so wanted to resolve the full scope of discovery before

discussing any such deposition.  (RX14 at 4.)

    Illumina and GRAIL then shifted to asking for detailed documentation "sufficient to show

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████." (RX19 at 2.) ██████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████  But Illumina and GRAIL then later changed course yet again, stating that they could

not limit discovery to these three topics because "we don't know what we don't know." (PX7, Ex.

A (Reed Decl.) ¶ 7.)

    Ultimately, in response to the request for "high-level overview documents," Caris produced

several PowerPoint presentations and a research paper.  (RX14 at 4; RX15.)  But Caris said it

would not produce other documents on ██████████████████████████████████████

████. (RX21 at 3.)  Caris explained that it had no "high-level" documents containing this

information, which was "precisely the type of trade secret information that Caris takes great

---

4 ████████████████████████████████████████████████████
█████████████████

measures to keep confidential." (*Id.* at 1.)  Nor does Caris maintain the requested information in summary form in the ordinary course of business, and it would have to prepare summary documents containing this information. (PX7, Ex. B (Farr Decl.) ¶ 15.)  On June 22, Illumina and GRAIL stated that they intended to file a motion to compel and to hold open Dr. Spetzler's deposition if he did not answer questions about ███████████████████████████████ █████████████. (RX23 at 2.)  Caris reiterated that it would not present him for a deposition twice and thus it could not go forward with the deposition until the issues about the scope of the discovery sought were resolved. (*Id.*)  Caris told Illumina and GRAIL to "[p]lease feel free to file your motion(s) to compel at your convenience." (*Id.*)

Nevertheless, still searching for an acceptable middle ground, Caris proposed multiple alternatives, including a deposition on written questions or a 30(b)(6) deposition. (RX29 at 2.) Illumina and GRAIL rejected every alternative to Spetzler's deposition, insisting that they would be acceptable only as *additional* forms of discovery.

In yet another meet and confer on July 20, Caris asked again if Illumina and GRAIL would consider taking a 30(b)(6) deposition in lieu of other discovery.  For the first time, Illumina and GRAIL indicated they would consider the compromise, and Caris's counsel asked them to send that day an informal, "bullet list" of topics tailored to the action.  Illumina and GRAIL waited another day and then sent a "non-exhaustive" list of 11 proposed deposition topics. (CX2 at 2.)  It was a wish list that covered virtually every aspect of ████████████████████████████ ██████████████:

- Communications between Caris and third parties regarding the proposed transaction;
- ████████████████████████████████████████████████████████████ ██████████████████████████;

6



- Caris's supply agreements with Illumina and any other NGS-based sequencing company or platform provider;

- Caris's assessments of any other cancer screening or MCED test, including the Galleri test;

- Caris's responses to the EC's RFI relating to the Illumina/GRAIL transaction;

- All topics contained in the Subpoena Ad Testificandum Issued to Caris MPI, Inc.; and

- All topics covered in Dr. Spetzler's investigational hearing.

(*Id.*)

Caris responded to this broad list with a counterproposal that included a narrower set of eight deposition topics, again reiterating its concern over the confidentiality of its trade secrets. (RX29 at 2.)  On August 2, Illumina and GRAIL flatly rejected Caris's proposal without making a counterproposal, contending among other things that "the Protective Order adequately protects Caris's interests here."  (RX30 at 2.)  But Complaint Counsel had advised Caris just a few days earlier that, in an apparent violation of the Protective Order, Illumina and GRAIL had already shared confidential Caris documents with one of their experts, Dr. Richard Abrams, who is affiliated with GRAIL.  (CX3 at 2; Complaint Counsel's Opposition to Respondents' Motion for

Leave to Allow Two Additional Testifying Experts (Doc. No. 602088 at 4, 8).)[5]  Illumina and

GRAIL intended to rely on Dr. Abrams to testify about, among other things, ███████████

████████████████████████████████████████████████████████████████████████

███████  (Doc. No. 602088 at 43.)  In other words, contrary to Illumina and GRAIL's insistence

that the Protective Order obviates Caris's concerns over confidentiality, they apparently have

already shared information on ████████████████████ with someone affiliated with GRAIL in

contravention of that order.

**C.    Illumina and GRAIL then told the ALJ that they needed discovery on ██████████
        ████████████████████████ – but they did not limit the requested relief to
        these topics.**

On August 3, Illumina and GRAIL filed a motion with the Administrative Law Judge

("ALJ") seeking to certify a request to the Commission for enforcement of "limited aspects of

document and testimony subpoenas" issued to Caris.  (PX6 at 1.)  They argued that discovery

about "████████████████████████████████████████████████████████████████████

████████████████████████, are key to Respondents' defenses." (*Id.* at 3.)  That was the

entire focus of their relevance argument.

Illumina and GRAIL also claimed that they needed to depose Dr. Spetzler "about ████

██████████." (PX6 at 8.)  They contended that there were ambiguities in the record and that

deposing Dr. Spetzler was necessary to "clear up the apparent conflict between the FTC's

---

[5]   *See also* Complaint Counsel's *Motion in Limine* to Exclude Certain Opinions of Respondents'
     Expert, Richard Abrams, M.D. (Doc. No. 602176 at 1, 3) (stating that Dr. Abrams had to
     disown reliance on third-party confidential materials); Respondents' Memorandum in
     Opposition to Complaint Counsel's *Motion in Limine* to Exclude Certain Opinions of
     Respondents' Expert, Richard Abrams, M.D. (Doc. No. 602290 at 7) (arguing that the FTC
     "cannot claim that deletion of references to such materials affects his opinions in any way" and
     asserting that "[t]hird-party materials were only '*a part* of [ ] his review and analysis'" (quoting
     Dr. Abrams' report) (second alteration and emphasis in original)).

allegations, Dr. Spetzler's testimony, and Caris's interrogatory response" ███████████.
(PX6 at 7.)  And Illumina and GRAIL asserted that they needed testimony from Dr. Spetzler on
"the other topics that were addressed in his investigational hearing and relied upon by the FTC's
expert, Dr. Scott Morton." (*Id.*)  Dr. Fiona Scott Morton is an economist opining on, among other
things, ██████████████████████████████████████████████████
██████████████████████████ (RX26.)  Notably, Illumina and GRAIL did not offer to
limit Dr. Spetzler's deposition to Caris's MCED test.

**D.     The ALJ concluded that {the features and development timeline of Caris's MCED test} were relevant, but did not limit discovery to those topics.**

The ALJ granted Illumina and GRAIL's Motion and found that "information sought by
Respondents is relevant." (PX8 at 4.)  He cited the allegations that "███████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
██████████████████" (*Id.*)  Accordingly, the ALJ recommended that the Commission
seek enforcement of Illumina and GRAIL's request for "the production of documentary material
sufficient to describe ████████████████████████████████████████████
███████████████████████████████████" (*Id.* at 6 n.8.)  The ALJ also
recommended enforcing Illumina and GRAIL's subpoena for the deposition of Dr. David Spetzler.
(*Id.* at 6.)  But while the ALJ recognized that Illumina and GRAIL "have agreed to narrow the
scope of the Subpoenas to focus on ██████████████████████████████" (*Id.* at 3), the
ALJ's recommendation did not limit the scope of the proposed deposition.

**E.     The Commission also authorized the pursuit of narrow discovery but did not limit this request to those topics.**

Trial in the Commission's challenge to the merger commenced on August 24, 2021.  That
same day, the Commission issued an order authorizing this action. (PX9.)  The order narrowed

Respondents' subpoenas to documents "sufficient to describe ████████████████

████████████████████████████████████████████████████████

██████████" and the deposition of Dr. Spetzler.  (*Id.* at 6.)

On September 30, 2021, the Commission's counsel notified Caris that it had filed a petition

for enforcement in district court seeking the relief authorized by the Commission.

## ARGUMENT

A.  **The Court must independently determine whether the administrative subpoenas should be enforced.**

The Commission's brief suggests that simply because the ALJ and Commission decided

that the subpoenas should be enforced, this Court must follow their lead.  The Commission

proposes a deferential standard of review in which this Court may consider only whether the

Commission's relevance determination is "obviously wrong."  (Mem. at 4.)  But "the deference

courts afford agencies does not 'eviscerate the independent role which the federal courts play in

subpoena enforcement proceedings.'"  *Consumer Fin. Prot. Bureau v. Accrediting Council for*

*Indep. Colls. & Schs.*, 854 F.3d 683, 689 (D.C. Cir. 2017) (citation omitted).  Indeed, "[t]he system

of judicial enforcement is designed to provide a meaningful day in court for one resisting an

administrative subpoena."  *United States v. Sec. State Bank & Tr.*, 473 F.2d 638, 642 (5th Cir.

1973).  Caris respectfully requests that this Court independently consider its contention that the

subpoenas do not seek reasonably relevant, non-duplicative information and are unduly

burdensome.  *See Consumer Fin. Prot. Bureau v. Accrediting Council for Indep. Colls. & Schs.*,

183 F. Supp. 3d 79, 81 (D.D.C. 2016) (Leon, J.) (setting forth legal standard), *aff'd*, 854 F.3d 683

(D.C. Cir. 2017).

In evaluating whether to enforce the subpoenas, the Court should not act as a mere rubber

stamp for the Commission, because "there are real limits on any agency's subpoena power."

10

*Consumer Fin. Prot. Bureau v. Accrediting Council for Indep. Colleges & Sch.*, 854 F.3d 683, 689

(D.C. Cir. 2017); *accord F.T.C. v. Ken Roberts Co.*, 276 F.3d 583, 586 (D.C. Cir. 2001) (observing

that "[s]ubpoena enforcement power is not limitless" and the Court's role in reviewing subpoenas

is "neither minor nor ministerial").  Indeed, the D.C. Circuit has emphasized that "[t]he federal

courts stand guard, of course, against abuses of their subpoena-enforcement processes[.]" *Sec. &*

*Exch. Comm'n v. Arthur Young & Co.*, 584 F.2d 1018, 1024 (D.C. Cir. 1978).

   Accordingly, federal courts do not enforce improper or overreaching administrative

subpoenas. *See, e.g., In re McVane*, 44 F.3d 1127, 1138 (2d Cir. 1995) (refusing to enforce

subpoenas that sought personal information from family members of those under investigations

because of privacy concerns); *United States v. Cox*, 73 F. Supp. 2d 751, 762 (S.D. Tex. 1999)

(quashing subpoenas because the IRS failed to explain how the source code sought was relevant

to the tax liabilities at issue).

**B.**  **Illumina and GRAIL seek irrelevant information from Dr. Spetzler and Caris.**

   The Commission downplays the relevance standard by asserting that "reasonably relevant"

is a "relaxed" requirement.  (Mem. at 8.)  But the Commission selectively quotes a case that in fact

states "[t]he standard for judging relevancy in an *investigatory* proceeding is more relaxed than in

an *adjudicatory* one." *FTC v. Invention Submission Corp.*, 965 F.2d 1086, 1090 (D.C. Cir. 1992)

(emphasis added).  It makes eminent sense for a more relaxed standard to apply to an investigatory

stage, because the agency may need "'roving inquiries to whatever extent seems to be necessary

to make the power of investigation effective.'" *Arthur Young & Co.*, 584 F.2d at 1030.  Even at

the investigative stage, though, the caselaw cited by the Commission recognizes that "an agency's

'broad access to information relevant to inquiries' is not without limits." *E.E.O.C. v. Lockheed*

*Martin Corp., Aero & Naval Sys.*, 116 F.3d 110, 113 (4th Cir. 1997).  Here, the subpoenas that the

Commission seeks to enforce are not agency investigative subpoenas, but rather are administrative

subpoenas issued by private parties in an adjudicatory proceeding where the issues were clearly established.

Just like discovery in federal court actions, an administrative subpoena "may not be so broad so as to be in the nature of a 'fishing expedition.'" *Peters v. United States*, 853 F.2d 692, 700 (9th Cir. 1988). As the Commission recognizes, discovery in FTC proceedings is limited "to the extent that it may be reasonably expected to yield information relevant to the allegations of the complaint, to the proposed relief, or to the defenses of any respondent." 16 C.F.R. § 3.31(c)(1). And in federal courts, it is also "a generally accepted rule that standards for non-party discovery require a stronger showing of relevance than for party discovery." *Pinehaven Plantation Props., LLC v. Mountcastle Family LLC*, No. 1:12-cv-62, 2013 WL 6734117, at *2 (M.D. Ga. Dec. 19, 2013) (citation omitted). Here, what Illumina and GRAIL seek beyond what has already been disclosed is simply not relevant.

    1.    **The proposed discovery into** ████████████████████ ████████████ **is duplicative or irrelevant.**

The granular discovery that Illumina and GRAIL seek on ████████████████ ██████████████████████ goes beyond what is truly relevant. The Commission agreed with the ALJ and found that the discovery would help resolve whether ██████████████ ████████████████. (PX9 at 5.) But the ALJ's conclusory finding that the information sought by Illumina and GRAIL is "unquestionably relevant" ignores that Illumina and GRAIL already have the key information they need from Caris. (PX8 at 5.) As Caris understands it, the issue is whether, post-acquisition, ████████████████████████████ ████████████████. (Pet. ¶ 10.) In his earlier testimony, Dr. Spetzler confirmed that ████ ██████████████████████████████████████. (CX4 at 81:4-16, 86:3-87:3.) He also testified about ████████████████████████

12

████████████████████████████████████████████████████████

████████████████████████████████████████████████. (*Id.*) The ALJ

concluded that this was not sufficient because Illumina and GRAIL could not question Dr. Spetzler

at the investigative hearing. (PX8 at 5.) The Commission now contends that more information is

needed because Illumina and GRAIL dispute whether ████████████████████████████

████████████████████████████████ (Pet. ¶¶ 10-11 & n.3.) But there is

no credible dispute about whether Caris is trying to develop an MCED test. It testified that it was

doing so in February 2021.

### 2. Illumina and GRAIL are poised to use Dr. Spetzler's deposition to explore wholly irrelevant issues.

The Commission asks this Court to order a deposition of Dr. Spetzler without any subject-

matter restrictions on topics. Based on the 30(b)(6) deposition topics that Illumina and GRAIL

previously proposed, they intend to explore a broad array of issues going far beyond the scope of

the document discovery they contend they need; *i.e.*, ████████████████████████████

████████████████████. Illumina and GRAIL told the ALJ that they need to depose Dr. Spetzler

on his entire prior testimony because it was cited by the Commission's proposed expert Dr. Scott

Morton. (Mot. at 8.) But if, as the Commission asserts, the discovery is needed ████████████

████████████████████████████████ (Mem. at 9), there is no

reason to allow any discovery beyond that narrow topic. The mere fact that Dr. Spetzler testified

on other topics during the Commission's <u>investigation</u> does not automatically translate into those

issues being relevant to the <u>adjudicatory proceeding.</u>

Discovery has "never been a license to engage in an unwieldy, burdensome, and

speculative fishing expedition." *Murphy v. Deloitte & Touche Grp. Ins. Plan*, 619 F.3d 1151, 1163

(10th Cir. 2010). If the Court allows Dr. Spetzler's deposition to proceed, it should limit the

deposition topics to ███████████████████████████ instead of the wide-ranging inquiry that Illumina and GRAIL seem to envision based on the proposed 30(b)(6) deposition topics. *See, e.g.*, *Reich v. Neeb-Kearney & Co.*, Misc. No. 94-2586, 1994 WL 660565, at *3 (E.D. La. Nov. 23, 1994) (determining that a subpoena was overly broad and modifying it to require production of only the contractual provisions relevant to the agency's inquiry); *Cox*, 73 F. Supp. 2d at 762 (quashing IRS subpoena that sought irrelevant information).

## C.   The subpoenas are also unduly burdensome in scope and in requiring Caris to unnecessarily disclose highly competitive information.

As this Court has recognized, unduly burdensome subpoenas should not be enforced. *Consumer Fin. Prot. Bureau*, 183 F. Supp. 3d at 81 (citing *FTC v. Texaco, Inc.*, 555 F.2d 862, 882 (D.C. Cir. 1977); *see also* 16 C.F.R. § 3.31(d) (Commission regulations protecting against "annoyance, embarrassment, oppression, or undue burden or expense, or to prevent undue delay in the proceeding"). Moreover, even if information is relevant, courts must consider "to whom the information is being released and the content of the information when determining if the information should be protected." *Falicia v. Advanced Tenant Servs., Inc.*, 235 F.R.D. 5, 10 (D.D.C. 2006) (granting a motion to quash a subpoena seeking bank records from non-parties).

Because Caris is a non-party, the Court should "be particularly cautious with respect to its proprietary materials." *Rambus Inc.*, No. 9302, 2003 WL 21485858, at *2 (F.T.C. June 11, 2003). Under the Commission regulations, a non-party's rights and "the public interest in minimizing disclosure of confidential documents" can "outweigh[] mere relevance." *Hoechst Marion Roussel, Inc.*, 2000 FTC LEXIS 134, at *14 (F.T.C. Aug. 18, 2003). Similarly, "[t]he Rule 45 'undue burden' standard requires district courts supervising discovery to be generally sensitive to the costs imposed on third parties." *Watts v. S.E.C.*, 482 F.3d 501, 509 (D.C. Cir. 2007). Here, even under a generous interpretation of relevance, the requested discovery adds little to the information that

14

Illumina and GRAIL already have about ████████████████████████████████████.
And because the Commission does not seek to limit Dr. Spetzler's deposition to ███████████
████████████████████████████, any potential relevance of his testimony is even more
attenuated.

Even if Illumina and GRAIL are seeking some marginally relevant information, however,
requiring Caris to disclose it to a competitor is unduly burdensome because producing confidential
information to a competitor creates enormous business risk for Caris.  In evaluating whether to
quash a subpoena under Rule 45, federal courts consider if the subpoena requires the disclosure of
trade secrets and have "traditionally evaluated whether release of the information would unfairly
harm the disclosing party's ability to compete in the marketplace."  *Falicia*, 235 F.R.D. at 7.
Neither the Commission nor Illumina and GRAIL dispute that the details of ███████████████
████████████████████████████ are confidential and proprietary trade secrets.  (PX7, Ex. B
¶ 5)  In addition, "courts understandably 'presume[ ] that disclosure to a competitor is more
harmful than disclosure to a noncompetitor.'"  *Falicia.*, 235 F.R.D. at 7 (citation omitted); *accord*
*Albany Molecular Rsch., Inc. v. Schloemer*, 274 F.R.D. 22, 25 (D.D.C. 2011).

The Commission contends that the Protective Order entered in the adjudicatory proceeding
will protect Caris.  (Mem. at 10-11.)  But Caris has resisted producing ███████████████████
████████████████████████████ in part because of its concerns about
protecting those specific trade secrets.  While the Commission points to caselaw finding that
protective orders were adequate to protect confidential information, federal courts have also
recognized that non-parties in particular may not be sufficiently protected by protective orders.
*E.g.*, *Educ. Logistics, Inc. v. Laidlaw Transit, Inc.*, No. 3-11-MC-036-L-BD, 2011 WL 1348401,
at *4 (N.D. Tex. Apr. 8, 2011) ("[A]s a non-party to the Montana Litigation, TTI is unable to

protect its interests should any of the confidential information be disclosed, even if done so pursuant to a protective order."); *Micro Motion, Inc. v. Kane Steel Co., Inc.*, 894 F.2d 1318, 1325 (Fed. Cir. 1990) (recognizing that "information supplied by [non-party] K–Flow is placed in risk of public disclosure by the very terms of the California protective order" because "K–Flow would, in fact, lose all control of the situation since disclosure of its information depends on the action by a court before whom it has no standing" and "[i]t would be divorced from reality to believe that either party here would serve as the champion of its competitor K–Flow either to maintain the confidentiality designation or to limit public disclosure as much as possible during trial").

In fact, that purported protection already appears to have failed here. Illumina and GRAIL have already shared confidential Caris's information with an expert associated with GRAIL. While the ALJ and Commission downplayed this concern, Illumina and GRAIL's own conduct – directing the expert to destroy the documents and not rely on them in offering his opinions – suggests that they had, in fact, violated the Protective Order. Nor can the fact that the expert destroyed the documents unring the bell. The expert reviewed Caris's confidential and proprietary information; it is impossible for him to unsee those facts. Caris simply cannot bear the risk of a similar future violation, particularly with respect to the additional discovery that Illumina and GRAIL seek, which comprises highly sensitive information about Caris's core trade secrets.

## CONCLUSION

The Court should deny the request to enforce the subpoenas.

Dated:  November 5, 2021

Respectfully submitted,

*/s/ Julia K. York*
Julia K. York
Bar ID: 478001
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
1440 New York Avenue NW
Washington, DC  20005
Phone:  (202) 371-7146
Fax:  (202) 661-9126
julia.york@skadden.com

Noelle M. Reed (*pro hac vice* pending)
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
1000 Louisiana, Suite 6800
Houston, TX  77002
Phone: (713) 655-5122
Fax:  (713) 483-9122
noelle.reed@skadden.com

*Counsel for Respondent Caris Life Sciences, Inc.*